UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAIN GULLEY,

          Plaintiff,          Case No. 1:11-cv-1169

v.                                        Honorable Robert Holmes Bell

PATRICIA CARUSO et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Dwain Gulley presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the G. Robert Cotton Correctional Facility, though the actions about which he complains occurred while he was housed at the Bellamy Creek Correctional Facility (IBC). Plaintiff sues former MDOC Director Patricia Caruso and the following IBC employees: Warden Kenneth McKee; Assistant Deputy Warden (unknown) Schooley; Resident Unit Manager (unknown) Walczak; Assistant Resident Unit Managers Jason Perry and (unknown) Rose; and Resident Unit Officer R. Platte.

According to the allegations of the complaint and its attachments, in early September 2009, Plaintiff was served with a civil complaint by the Attorney General on behalf of the state treasurer. The suit, which was filed under the Michigan Correctional Facility Reimbursement Act (CFRA), MICH. COMP. LAWS § 800.401 *et seq.*, sought to recover funds that Plaintiff had deposited in a credit union account. Shortly after receiving the complaint, Plaintiff was transferred from the Muskegon Correctional Facility to IBC. On October 15, 2009, Plaintiff mailed a "Proof of Claim" to the state treasurer. (Compl. ¶ 17, docket #1, Page ID#3.) When the treasurer did not respond to the Proof of Claim, Plaintiff attempted to mail a "Notice of Opportunity to Cure" and "Notice of Default" to the court and the state treasurer. (*Id.* at ¶ 18.) He presented the documents to Defendant Perry to be notarized, which Perry did. After notarization, Plaintiff gave the mail to Perry to be sent out as expedited legal mail. Perry then confiscated the documents and issued a Notice of Intent to Conduct an Administrative Hearing on whether the documents were UCC-related materials that were not permitted as either outgoing or incoming mail under MICH. DEP'T OF CORR., Policy Directive 05.03.118. According to the Notice of Intent, the documents in issue consisted of the following:

(1) 4 copies of a two-page Affidavit of Notice of Default; (2) four copies of a one-page Notice of Fault and Opportunity to Cure; (3) three copies of a three-page "Sate [sic] in Fact"; and (4) four copies of a one-page proof of service. (*See* Ex. 6 to Compl., Page ID#16.)  Perry stated in the Notice of Intent that the documents were prohibited under Paragraph D(7) of PD 05.03.118 as outgoing mail for the purpose of operating a business enterprise from within the facility and under Paragraph HH(3), because prisoners are prohibited from receiving or possessing mail if it is a threat to the security, good order, or discipline of the facility.  He further alleged (verbatim):

> The documents confiscated from prisoner Gulley are identified by CFA as the writers as secured party creditors, provides notice of default, and offers the opportunity to cure the default and addresses the filing of liens in the UCC data base and these are business functions, and also advocate or promote the violation of state or federal law. It is a felony in Michigan to knowingly place a fraudulent UCC lien on another individual. It is a felony under MCL 440.9501(06) to file a false or fraudulent lien with the Secretary of State.

(Ex. 6 to Compl., Page ID#16.)

On November 22, 2009, Defendant Rose determined that, according to the Central Facilities Administration (CFA), the documents were improper under MICH. DEP'T OF CORR., Policy Directive 05.03.118(D)(7) and MM(2), (11), and (22) because the documents

> identify the writers as secured party creditors, provide[] notice of default, and offer the opportunity to cure the default and address the filing of liens in the UCC data base. These are business functions, and also advocate or promote the violation of State or Federal laws. It is a felony in Michigan to knowingly place a [fraudulent] UCC lien on another individual.

(Ex. 7 to Compl., Page ID#17.)

Plaintiff alleges that, because he was not permitted to file the documents, he lost his state-court action, resulting in the state taking $1,371.94 from Plaintiff's credit union account.  He contends Defendant Perry violated his First Amendment right of access to the courts, his First

Amendment right to communication, and his Fourteenth Amendment rights to due process and equal protection. He also asserts a violation of state administrative law. He contends that the remaining Defendants conspired to violate those rights and/or had supervisory responsibility over Perry's conduct.

### Discussion

    I.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal*

plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Conspiracy

Plaintiff alleges that all Defendants conspired to violate his rights to access the courts, to due process and to equal protection. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim."

*Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. State of Mich.,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995).

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, fail to identify any link between the named conspirators or the existence of any agreement between them. To support his claim of conspiracy, Plaintiff relies solely on the fact that Rose upheld Perry's allegations and that the other Defendants had supervisory authority over Perry. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 555. Allegations that merely hint at a "possibility" of conspiracy are insufficient; a complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. The mere fact that Rose upheld the notice of intent does not indicate the existence of a conspiracy between Rose and Perry. The Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 129 S. Ct. at 1250. In light of the far more likely possibility that Rose merely concurred with Perry's judgment, Plaintiff fails to state a plausible claim of conspiracy between Perry and Rose.

Moreover, Plaintiff's allegation that the remaining Defendants must have conspired because they had supervisory responsibility over Defendant Perry is equally meritless. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory

of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Caruso, McKee, Schooley, Walczak or Platte engaged in any active unconstitutional behavior, much less that they conspired with Perry and Rose to do so.

For both reasons, Plaintiff fails to state a conspiracy claim against any Defendant.

### B. Access to the Courts

Plaintiff argues that Defendants Perry and Rose denied him access to the courts by confiscating the materials he wished to file in response to the state's civil action under the CFRA to recover Plaintiff's credit union deposits. Plaintiff alleges that, due to Defendants' conduct, the action was resolved against him and his money was taken.

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in

particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

Further, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing

*Lewis*, 518 U.S. 353 & n.3). The *Christopher* Court held that, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher*, 536 U.S. at 416.

Even assuming that Defendants Perry and Rose improperly concluded that Plaintiff's documents were contraband under PD 05.03.118, Plaintiff fails to state an actionable access-to-the-courts claim. Plaintiff acknowledges that the action he was defending was a complaint under the CFRA, MICH. COMP. LAWS § 800.401 *et seq.* He therefore was not pursuing a direct appeal, a habeas corpus action or a civil rights claim, the only types of actions protected by the right of access to the courts. *See Thaddeus-X*, 175 F.3d at 391.

Moreover, his defense to the action filed against him was frivolous. *See Lewis*, 518 U.S. at 353. Under the CFRA, when there is good cause to believe that a prisoner has assets, the Attorney General may file a complaint seeking recovery of the assets as reimbursement for the cost of care. Upon the filing of a complaint making the requisite showing, the circuit court must issue an order to show cause why the prayer for relief should not be granted. MICH. COMP. LAWS § 800.404(1)-(3). At the hearing on the complaint, if it appears that the prisoner has assets, the court must issue an order requiring the party having possession of the assets to turn them over to the state. *Id.*, subsection (4). "Assets" are defined under the statute as

> property, tangible or intangible, real or personal, belonging to or due a prisoner or former prisoner including income or payments to such prisoner from social security, worker's compensation, veteran's compensation, pension benefits, previously earned salary or wages, bonuses, annuities, retirement benefits, or from any other source whatsoever, but does not include any of the following:
>
> (i) The homestead of the prisoner up to $50,000 in value.

>    (ii) Money saved by the prisoner from wages and bonuses paid the prisoner while he or she was confined to a state correctional facility.

MICH. COMP. LAWS § 800.401a(a). Because Plaintiff does not contend that the asset in issue was either Plaintiff's home or his prison-wage savings, Plaintiff had no defense to the action under the statute.

Moreover, the documents Plaintiff attempted to file, which he has attached to his complaint (*see* Ex. 9 & 10 to Compl., Page ID##19-21), were frivolous. His Affidavit of Notice of Default raises ludicrous assertions common to fraudulent UCC actions. For example, Plaintiff avers that he is Dwain Gulley Bey®, a "living, breathing man" . . . who is the "Secured Party, superior claimant, holder in due course, and principal creditor having a registered priority lien hold interest to all property held in the name of the Debtor; DWAIN GULLEY®, EVIDENCED BY UCC-1 Financing Statement #2009/282/2645/6 filed with the Department of Licensing in the State of Washington." (*Id.* at 19.) The document then demands that the assistant attorney general respond with proof of a "valid lawful contract" within ten days or be held to have stipulated to the facts and be subject to remedy with a "Bill of Exchange or other appropriate commercial paper." (*Id.* at 20.) In his Notice of Fault and Opportunity to Cure, Plaintiff stated that the state treasurer had seven days in which to cure his default or the notice will establish a default and leave Plaintiff to remedies under the UCC. (*Id.* at 21.)

Plaintiff's nonsensical submissions did not and could not constitute a defense to the state's action to recover his assets under MICH. COMP. LAWS § 800.401a. As a consequence, he cannot demonstrate that Defendants' actions caused actual injury to his ability to present a nonfrivolous defense. *See Lewis*, 518 U.S. at 353.

### C. Free Speech and Communication

Plaintiff broadly contends that the confiscation of his UCC materials violated his right to free speech and communication under the First Amendment. The Supreme Court has recognized that prison inmates retain those First Amendment rights not incompatible with their status as prisoners. *Pell v. Procunier*, 417 U.S. 817, 832 (1974); *see also Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009) (construing prior, broader version of MICH. DEP'T OF CORR., Policy Directive 05.03.118 ¶ HH(23) as unconstitutionally vague). The courts routinely have recognized that prisoners and their correspondents have a First Amendment interest in communication. *Jones*, 569 F.3d at 267 (citing *Procunier v. Martinez*, 416 U.S. 396, 417 (1974)). However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The Supreme Court has identified four factors relevant to determining the reasonableness of a challenged prison regulation:

> 1. there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> 2. there must be alternative means of exercising the right that remain open to prison inmates;
>
> 3. we must consider the impact that accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally; and
>
> 4. there must not be alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Turner*, 482 U.S. at 89-91; *Jones*, 569 F.3d at 266-67. Failure to satisfy the first factor renders the regulation unconstitutional without regard to the remaining three factors. *Id.* at 267. If the first factor is satisfied, the remaining factors are considered and balanced together as "guidelines" by which the court can assess whether the challenged actions are reasonably related to a legitimate penological interest. *Id.* It should further be noted that the *Turner* standard is "not a 'least restrictive alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Flagner v. Wilkinson*, 241 F.3d 475, 484 (6th Cir. 2001) (quoting *Turner*, 482 U.S. at 90-91). Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id.*

In *Jones v. Caruso*, 569 F.3d 258, 271-72 (6th Cir. 2009), the Sixth Circuit considered whether a prior version of MICH. DEP'T OF CORR., Policy Directive 05.03.118, ¶ HH(23) unconstitutionally prevented a prisoner's access to legitimate UCC materials. Paragraph HH(23) barred prisoners from possessing "[m]ail regarding actions that can be taken under the Uniform Commercial Code (UCC) which could be used to harass or threaten another individual, including the filing of a lien against the individual. This standard does not include legal materials which set forth the statute or provide a scholarly legal analysis of the UCC." In *Jones*, the Court concluded that, under the first *Turner* factor, the state's restriction on UCC materials was rationally connected to the legitimate governmental interest of preventing prisoners from committing fraud under the UCC. *Id.* at 270. The court also found that, even the broader policy effective at that time met the second prong of the *Turner* test, because it allowed prisoners a reasonable opportunity to access scholarly and statutory UCC materials. *Id.* at 271. Those holdings are equally applicable here.

The *Jones* court concluded, however, that ¶ HH(23) failed on the third *Turner* inquiry, because easy alternatives existed that better accommodated prisoner rights at de minimus cost. *Id.* at 273. In reaching that conclusion, the court specifically relied upon the intervening modification of the policy, which eliminated ¶ HH(23) (which it had been enjoined from enforcing) and adopted narrower rules under PD 05.03.118 ¶ D(7) and PD 05.03.118 ¶ HH(3). Paragraph D(7) prohibits mail that is a "threat to the security, good order or discipline of the facility, may facilitate or encourage criminal activity or may interfere with the rehabilitation of the prisoner," including "[m]ail for the purpose of operating a business enterprise from within the facility." *See Jones*, 569 F.3d at 273. Paragraph HH(3) prohibits "mail advocating or promoting the violation of [a] statute or federal laws." *Id.* The *Jones* court concluded that the narrower rules were sufficient substitutes for ¶ HH(23). The court also observed that, since the filing of the lawsuit, it had become illegal in Michigan to file fraudulent lien statements. *Id.* at 275 (citing MICH. COMP. LAWS § 440.9501(6)). The Sixth Circuit therefore upheld the district court's injunction barring enforcement of ¶ HH(23), but it suggested that the subsequently adopted narrower rules would withstand constitutional muster. *Id.* at 275, 278. *Jones*, therefore, does not support Plaintiff's contention that the MDOC was enjoined from restricting UCC materials in any way in any way other than by way of ¶ HH(23).

In the instant case, in contrast, the hearing officer found that Plaintiff had expressly invoked the UCC process of default and opportunity to cure and had notified the recipient that, should the state fail to meet the requirements of his notice, Plaintiff intended to use the remedies under the UCC, which include the filing of liens. The hearing officer reasonably concluded that such a filing would be fraudulent and in violation of state law. The officer further concluded that the documents violated PD 05.03.118 ¶ D(7) ("Mail for the purpose of operating a business enterprise

while within the facility."), ¶ MM(11) ("Mail encouraging or providing instruction in the commission of criminal activity. This includes mail encouraging or providing instruction in the filing of a false or fraudulent UCC lien."), and ¶ MM(22) ("Mail for the purpose of operating a business enterprise while within the facility. This does not apply to mail regarding the operation of a business enterprise after release."). The provisions relied upon are essentially identical to the narrower restrictions cited with approval in *Jones*, 569 F.3d at 275, 278. Applying appropriate deference to the decisions of prison officials, *see Turner*, 482 U.S. at 90, the Court concludes that the policy provisions relied upon are sufficiently narrowly tailored as to pass the third and fourth prongs of *Turner*. Moreover, Plaintiff has failed entirely to identify any less restrictive alternative that would meet the legitimate penological interest of the state and that would not impose a significant burden on prison officials. *Id.* at 91 (requiring the prisoner to "point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests").

In sum, the Court concludes that Defendants' confiscation of Plaintiff's mail was reasonably related to legitimate penological interests. Accordingly, the allegations of the complaint fail to state a violation of Plaintiff's First Amendment's rights to speech and communication.

    **C.**  **Due Process**

Plaintiff next broadly claims that he was denied due process by Defendants' actions. He contends that his outgoing mail was confiscated and that the hearing officer improperly upheld the confiscation under prison policy. Plaintiff's due process claim merits little discussion. Claims under § 1983 may not be based upon alleged violations of state law, nor may federal courts order state officials to comply with their own law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Plaintiff does not enjoy any federally protected liberty or property interest in

state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994).

Moreover, it is clear that Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284 n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).

Here, even assuming that Petitioner had a property or liberty interest in his documents, he does not deny that he received both timely notice of a hearing and a hearing. He attaches both the notice of intent to conduct the hearing and the administrative hearing report. The notice clearly outlines the reason for the hearing and the hearing report sets forth the reasoning of the hearing officer. By his own attachments, Plaintiff demonstrates that he received all of the process to which he was entitled. He therefore fails to demonstrate a due process violation.

### D. Equal Protection

In a single conclusory allegation, Plaintiff contends that Defendants' confiscation of his UCC documents violated his Fourteenth Amendment right to equal protection. The Equal

Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which essentially is a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). The Equal Protection Clause prevents states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis. *Johnson v. Bredesen*, 624, F.3d 742, 746 (6th Cir. 2010) (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005)). Plaintiff arguably suggests that Defendants' enforcement of MICH. DEP'T OF CORR., Policy Directive 05.03.118 implicates his fundamental First Amendment right to free speech.

When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner*, 482 U.S. at 84).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev.*

*Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66.

Plaintiff makes no factual allegations that would support his sweeping claim that he was denied equal protection. Plaintiff fails entirely to identify any similarly situated individual who was treated differently, much less that such different treatment was intentional. Indeed, Plaintiff strongly implies that other prisoners were subjected to the same policies governing contraband UCC materials. Plaintiff's equal protection claim therefore is wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff fails to state an equal protection claim.

### D. State-Law Claims

Plaintiff alleges that Defendants' actions also violated the Michigan Constitution and Michigan Administrative Rule 791.6603(2). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's challenge to the enforcement of state law therefore fails to state a claim under § 1983. Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over the state-law claim, the Court declines to exercise jurisdiction. The Sixth Circuit routinely has held that, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state-law claims should be dismissed without reaching their merits. *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)). Plaintiff's state-law claim therefore will be dismissed without prejudice.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Date:   January 5, 2012                         /s/ Robert Holmes Bell
                                                ROBERT HOLMES BELL
                                                UNITED STATES DISTRICT JUDGE